CITY OF PIQUA, APPELLEE, *v.* HINGER, APPELLANT.

(No. 664—Decided December 29, 1967.)

*Mr. Richard K. Wilson,* director of law, for appellee.

*Messrs. Faust, Harrelson & Thornburgh,* for appellant.

KERNS, J. The defendant, appellant herein, Earl R. Hinger, was tried and found guilty by a jury of operating a motor vehicle while under the influence of intoxicating liquor, contrary to and in violation of an ordinance of the city of Piqua.

From the judgment and sentence entered upon the verdict, Hinger has appealed to this court on questions of law.

The first of two assignments of error challenges the admissibility of evidence pertaining to the results of a Breathalyzer test administered to the defendant.

A police officer of the city of Piqua testified over ob-

jection that the defendant consented to a Breathalyzer test and that the results of the test revealed alcoholic blood content of .16 per cent. Thereafter, a record slip showing the results was admitted into evidence.

The officer who administered the Breathalyzer test had considerable training and experience in the operation of the machine, but candidly admitted that he was not qualified to scientifically interpret the results. In fact, he likened his relationship to the machine to his relationship to an automobile stating that he was familiar with the operation, but could not explain the "whys and wherefores" that produced the result.

In the civil case of *Parton* v. *Weilnau, Admx.,* 169 Ohio St. 145, the Supreme Court of Ohio, at page 151, made the following observation:

"* * * Certainly, without some definite expert testimony to explain the significance of the percentage of alcohol found in decedent's blood, the evidence as to that percentage does not tend to prove decedent was under the influence of alcohol. At the present time, the scientific foundation for such a test for sobriety is not so well established and known that a court can take judicial notice as to its significance. Therefore, a jury, without the guidance of expert testimony, should not be permitted to speculate as to its significance. * * *"

This observation of the Supreme Court was consistent with the holding in *State* v. *Minnix,* 101 Ohio App. 33, where the syllabus provides as follows:

"1. Testimony upon the results of a test made on an alcometer is in the class of expert testimony and, in order to be competent, the witness must be skilled, learned or experienced in the mechanics and use of such machine, so as to qualify as an expert witness.

"2. A captain in a police department who admits he knows nothing about an alcometer is not qualified to give expert testimony upon the result of a test made on such machine."

Although the *Parton case* was decided more than eight years ago, the Supreme Court has shown no inclination to dispense with the requirement that some scientific

interpretation or explanation must accompany the results of sobriety tests. On the contrary, in the comparatively recent case of *Mentor* v. *Giordano,* 9 Ohio St. 2d 140, that court implied that some knowledge of the workings of a Breathalyzer is necessary before the results of the test are admissible against the accused. Therein, at page 146, the court said:

"* * * There is no evidence that the Breathalyzer at the police station was in proper working order or that its manipulator was qualified, other than his own bare declaration to that effect. See *State* v. *Baker,* 56 Wash. 2d 846, 355 P. 2d 806, and *Pruitt* v. *State* (Tenn.), 393 S. W. 2d 747.

"Nor was there any evidence to explain what the '.18 per cent' reading of the Breathalyzer indicated. Under the cases last cited, the evidence relating to the Breathalyzer test was incompetent and should not have been considered."

In the absence of any expert testimony to explain the significance of the percentage of alcohol found in the defendant's blood or how the instrument functioned to arrive at that percentage, we are of the opinion that the trial court should not have admitted the results of the test into evidence against the defendant—but in view of all the evidence presented in this case it is doubtful that the admission of the test results constituted *prejudicial* error. See *State* v. *Titak,* 75 Ohio Law Abs. 430. Hence, we must meet the second assignment of error.

For most intents and purposes, this is a typical "drunken driving" case except perhaps for the fact that the defendant herein admits the consumption of something more than the proverbial "two beers."

However, a serious constitutional question has been raised. In addition to the Breathalyzer test which was given to the defendant with his consent, he was also put through certain physical tests, and, unbeknown to him, movies were filmed of his actions at the police station. The subject was also asked questions for the purpose of completing a police questionnaire.

A brief reference to the actual testimony presented

by the arresting officer probably best illustrates the nature of the question presented:

"Q. Did you at any time while you were there hear any officer advise him as to his rights to an attorney? A. Yes, he was told he could call an attorney.

"Q. When? A. The procedure is the time they are being booked.

"Q. You tell them as they are being booked, after they have gone through all these tests? A. Yes, they have, usually gone through that procedure, yes.

"Q. So the first time this man was ever advised as to his rights to an attorney was after you had taken movies, after you put him through physical tests, after you put him through the Breathalyzer and after you filled out the questionnaire? A. This has been the procedure.

"Q. And he was already under arrest and charged with DWI before you performed any of these tests? A. Yes, I suppose he was.

"Q. So the sole purpose for performing these tests is to try to bolster your case against him? A. That's the procedure.

"Q. He was already charged with DWI and was under arrest? A. Yes.

"Q. And then you, after doing those things, then you went through all these tests and then later one of the officers advised him he had a right to call a lawyer? A. Yes."

The defendant made a timely and continuing motion to suppress the evidence presented by the prosecution on the ground that the procedure adopted by the police was contrary to the principles enunciated in *Miranda* v. *Arizona,* 384 U. S. 436.

At the trial, the prosecution argued that the *Miranda case* does not apply to misdemeanor cases and cited the case of *Columbus* v. *Hayes,* 9 Ohio App. 2d 38, which provides as follows in the first paragraph of the syllabus:

"The punishment which may be imposed for the offense of operating a vehicle while under the influence of alcohol is not, at present, sufficient to bring that offense within the constitutional limitations on custodial interro-

gation under *Miranda* v. *Arizona* (1966), 384 U. S. 436."

The trial court overruled the motion to suppress upon the authority of that case.

Unfortunately, the opinion in the *Hayes case* states no reasons for its conclusion, and we have encountered some difficulty in recognizing why constitutional rights are any less sacred in misdemeanor cases than in felony cases.

The distinction between misdemeanors and felonies is found in the penalty provisions of the criminal law, and this distinction, which is based entirely upon the place of possible confinement, has little or nothing to do with the actual trial of a criminal case. How then could this distinction affect the basic question of fairness which is an inherent quality of every constitutional safeguard?

The Constitution is, of course, aloft from administrative inconvenience, and we perceive no other valid reason for lowering its protective shield during the trial of misdemeanor cases. The onerous prospect of confinement in the county jail rather than the state penitentiary is hardly an adequate substitute for a fair trial, and, as a practical matter, it is well known that the actual punishment for many felonies is less harsh and severe than the penalties which may be inflicted in some misdemeanor cases.

We have no sympathy for the defendant in this case. Traffic problems being as they are, he has been charged with a very serious crime. But the defendant is not a criminal in the usual sense. His occupation is that of a paper hanger, and he should be entitled, at least, to the same constitutional protection afforded daily to hardened criminals.

Accordingly, we are unable to agree with the conclusion reached by the Court of Appeals for Franklin County in the *Hayes case.* In our opinion, the motion to suppress should have been sustained upon the authority of the *Miranda case.*

The judgment will, therefore, be reversed and the defendant discharged.

*Judgment reversed.*

CRAWFORD, P. J., and SHERER, J., concur.