THE STATE OF OHIO, APPELLEE, *v.* JONES, APPELLANT.

(No. 281—Decided November 5, 1973.)

*Mr. Daniel W. Drake*, prosecuting attorney, for appellee.

*Messrs. Young & Jones* and *Mr. Warren C. Young*, of counsel, for appellant.

HUNSICKER, J. Defendant Miss Jennifer Lynn Jones, appellant herein, was found guilty, by a jury, of driving an automobile while under the influence of alcohol, in violation of R. C. 4511.19. From the judgment entered on the verdict, an appeal has been lodged in this court.

The following assignments of error are alleged:

"1. The trial court erred in admitting the results of the breathhalyzer test without testimony to explain the significance of the percentage of alcohol found in the blood and how the instrument functioned to arrive at that percentage.

"2. The trial court erred in admitting the results of the breathalyzer test without testimony as to the methods approved by the director of health and testimony as to specific performance with those approved methods.

"3. The trial court erred when, at the time of over-

ruling defendant-appellant's motion for a directed verdict, it announced in the presence of the jury that 'a prima facie case has been made at this point,' which in effect was a finding of 'guilty' and which required the defendant-appellant to then prove her innocence.

"4. The verdict is against the manifest weight of the evidence."

The evidence shows that the appellant was driving at a high rate of speed north on interstate highway 71, at about 8:30 p. m., on February 2, 1972. It was dark, misting or rainy, and the road was wet. The speed and the changing of lanes, with erratic driving, caused the officer, State Patrolman Wingo, to follow and stop Miss Jones. At that time, an overturned beer can was noticed on the floor of the vehicle, with liquid flowing onto the floor.

Miss Jones was required to undergo certain physical tests, in which she displayed a staggering or wobbly condition. She was then placed under arrest and taken to the city of Wilmington, Ohio, and detained. Her vehicle was removed from the highway by other persons. The officer smelled an alcoholic beverage on her breath, and noticed her bloodshot eyes, which were starey and glassy. From this, and the physical tests, he concluded that she was under the influence of alcohol.

At 9:25 p. m., a breathalyzer test was administered. That test was administered by Ohio State Highway Patrol Sergeant Mack, a senior breathalyzer operator, licensed by the Ohio Department of Health to operate such contrivance, which is designed to measure the blood alcoholic content of one suspected of driving a motor vehicle while under the influence of alcohol.

The defendant testified that: (1) she was speeding up I-71 when the officer stopped her; (2) an hour or more prior to the speeding, she had three drinks of whisky and water and, while driving, she sipped some beer from one of the six cans she purchased before entering the interstate highway.

Her father (a lawyer), and two other lawyers (one a prosecutor elect), testified that the defendant was not un-

der the influence when they saw her in the patrol station about one and one-half hours after the arrest. The prosecuting official, Mr Drake, admits that Miss Jones was not drunk, as most people understand the term. Mr. Drake does insist that she was driving her motor vehicle while under the influence of the alcohol that she had consumed.

The first two assignments of error question the use, as evidence in this case, of the results of the breathalyzer test made by Sergeant Mack, and consented to by Miss Jones. We do not deem it necessary to set out the terms of R. C. 4511.19, as amended, and effective at the date of the occurrence herein. This section provides the conditions under which a breathalyzer test may be given, and by whom it may be given, so that the results may be presented as evidence of the facts alleged.

The court, in *Mentor* v. *Giordano,* 9 Ohio St. 2d 140, said in paragraph six of the syllabus, prior to the date amended R. C. 4511.19 became effective:

"Before the results of a breathalyzer test given an accused are admissible in evidence against him, it is incumbent on the state to show that the instrument was in proper working order and that its manipulator had the qualifications to conduct the test."

Thereafter, *Piqua* v. *Hinger,* 13 Ohio App. 2d 108 (an opinion also announced prior to the amendment of R. C. 4511.19) adopted the above statement as the rule then to be followed.

With the change in the statute, the courts made the necessary adjustment in the rules of evidence—deemed necessary to a proper presentation, before a court or jury, of cases involving driving while under the influence of alcohol.

The syllabus of *State* v. *Sickles,* 25 Ohio App. 2d 1, states:

"Prerequisites as to the admission of evidence relating to the results of a Breathalyzer test in the trial of one accused of the offense of operating a motor vehicle while under the influence of intoxicating liquor are established from the specific wording found in R. C. 4511.19 and *Men-*

*tor* v. *Giordana* (1967), 9 Ohio St. 2d 140. The prerequisites are that there be:

"1. Evidence that establishes that the bodily substance, the breath, was withdrawn within two hours of the time of the alleged violation.

"2. Evidence that establishes that the Breathalyzer equipment was in proper working order.

"3. Evidence that the operator of the Breathalyzer equipment had the qualifications to conduct the test.

"4. Evidence that such bodily substance, the breath, had been analyzed in accordance with methods approved by the Director of Health."

Thereafter, *State* v. *Miracle,* 33 Ohio App. 2d 289, said, in paragraph one of the syllabus:

"1. By virtue of R. C. 4511.19, before testimony as to the results of a breathalyzer test may be admitted into evidence, and before any consideration of the presumption set forth in such section may be had by the trier of fact, the following facts pertaining to the breathalyzer tests must be affirmatively established:

"a. The specimen subject of the test must be withdrawn within two hours of the time of such alleged violation;

"b. The substance of the specimen shall be analyzed in accordance with methods approved by the director of health;

"c. The analysis shall be made by an individual possessing a valid permit issued by the director of health, pursuant to R. C. 3701.143."

Sergeant Mack testified at length as to his training and experience as an operator of the breathalyzer on which the test herein was made. He said that he was a senior breathalyzer operator, licensed by the Ohio Department of Health. The certification of the officer by the Department of Health, as provided by R. C. 3701.143, was admitted in evidence, without objection. The test herein was taken on February 2, 1972, and the machine was "simulated," that is, tested, on February 1, 1972. The log book for the simulation was introduced in evidence.

Although the detailed testimony of Sergeant Mack discusses the breathalyzer, and its size and operation, nowhere is there elicited from him, or any other witness, that the substance of the specimen was analyzed in accordance with methods approved by the Director of Health. There was, from the testimony of Sergeant Mack, a "green list," marked "Exhibit 1," but it was not introduced in evidence, and its contents, or what it represented, was not established by affirmative testimony.

The failure to establish affirmatively that the test conducted by Sergeant Mack met all of the methods approved by the Director of Health is fatal to the reception of the results of the breathalyzer test in evidence.

With the exclusion of the evidence relating to the breathalyzer test, because of its improper receipt, the only other evidence of the offense is the testimony of the arresting officer as to the condition of Miss Jones at the time of arrest. To counter that evidence, there is the testimony of Miss Jones; the testimony of her father, Fred Jones, a lawyer; and the testimony of two other lawyers, plus a doctor, who was treating Miss Jones for a sinus infection which affected, so the doctor testified, the speech and equilibrium of Miss Jones.

In consideration of the state of the record, and the exclusion of the results of the breathalyzer test, we must conclude that the judgment is manifestly against the weight of the evidence. The judgment is reversed, and the cause is remanded to the trial court for further proceedings.

*Judgment reversed and cause remanded.*

BRENNEMAN, P. J., and VICTOR, J., concur

BRENNEMAN, P. J., and VICTOR, J., of the Ninth Appellate District, sitting by designation in the First Appellate District.

HUNSICKER, J., retired, assigned to active duty under authority of Section 6 (C), Article IV, Constitution.