The STATE of Ohio

v.

SCHINDLER.

Akron Municipal Court.

No. 92 TRC 24892.

Decided April 21, 1993.

*Suzanne L. Stephens,* for the plaintiff.

*C. William Goodlet,* for the defendant.

---

ELINORE MARSH STORMER, Judge.

A motion to suppress was filed by the defendant Mary B. Schindler, challenging, *inter alia,* the validity of the BAC DataMaster Test. A hearing was held and all but one issue was resolved in favor of the prosecution. Subsequently, hearing briefs were filed by both parties regarding a unique issue of law. Specifically, the defendant argues that her intake of secondhand smoke during the period before and during BAC DataMaster breath testing interfered with the testing such that the test should be suppressed.

The facts indicate that the defendant, although not a smoker herself, was in an area where another person was smoking during the twenty minutes prior to her taking a breath test. The defendant's husband was seated approximately ten to fifteen feet away from the defendant and smoked two or three cigarettes before and during the time the BAC DataMaster test was being administered.

The Ohio Department of Health guidelines for administering breath tests are codified in Ohio Adm.Code 3701–53–02(B), which requires breath samples of deep lung (alveolar) air to be analyzed with instruments approved by the Director of Health and according to an operational checklist designed for the specific breath-testing instrument being used.

■ The National Patent BAC DataMaster Operational Checklist reads as follows:

"1) Observe subject for twenty minutes prior to testing to prevent oral intake of any material[;]

"2) Push run button to initiate testing sequence[;]

"3) Enter data as prompted by instrument display[; and]

"4) Take breath sample when 'Please Blow' appears on display[.]"

These regulations are to be strictly construed against the state and in favor of the defendant. *State v. Young* (Apr. 11, 1991), Delaware App. No. 90–CA–40, unreported, 1991 WL 57176.

■ In a hearing on a motion to suppress the results of a blood-alcohol test, both the burden of proof and the burden of going forward with the evidence are on the prosecution to the extent that the defendant takes issue with the legality of the test. *State v. Gasser* (1980), 5 Ohio App.3d 217, 5 OBR 501, 451 N.E.2d 249. If the state fails to show that it complied with applicable procedures for administering a breath test, the results of such test are inadmissible in evidence. *State v. Jones* (1973), 37 Ohio App.2d 127, 131, 66 O.O.2d 287, 289, 308 N.E.2d 755, 757. At a suppression hearing, the evaluation of the evidence and the credibility of the witnesses are for the trier of fact. *State v. Mills* (1992), 62 Ohio St.3d 357, 366, 582 N.E.2d 972, 981–982.

■ However, the Ohio Supreme Court has held that rigid compliance with the Department of Health regulations with regard to alcohol testing is not necessary in order for test results to be admissible. *State v. Steele* (1977), 52 Ohio St.2d 187, 6 O.O.3d 418, 370 N.E.2d 740. The results of the BAC test are admissible into evidence if there has been "substantial compliance" with the Ohio Department of Health regulations. *Id.*

■ Here, the defendant's motion to suppress questions whether the procedures established by the Director of Health were followed in the administration of the first part of the test; that is, does the breathing of secondhand smoke constitute "oral intake" of material within the twenty-minute observation period. The purpose of the observation rule is to require positive evidence that during the twenty minutes prior to the test the accused did not ingest some material which might produce an inaccurate test result. *Id.*

The defendant points out that direct smoking of a cigarette does interact with the alveolar air so as to affect the results of the BAC Verifier test. *State v. Durdel* (Aug. 23, 1985), Sandusky App. No. S–8–11, unreported, 1985 WL 7574. However, there is no case dealing with the effect of secondhand-smoke inhalation on the BAC DataMaster. Without further medical evidence than that discussed

above, the defendant's allegations offer an insufficient factual basis to support her theory.

In support of her argument the defendant presented Surgeon General findings regarding the impact on persons of secondhand smoke from non-filter cigarettes. The Surgeon General's report states that *undiluted* secondhand smoke from non-filter cigarettes can have more impact on the respiratory system than direct smoking. According to the Surgeon General's report, "side-stream smoke" or secondhand smoke from non-filter cigarettes contains higher amounts of "tobac-co-combustible" gases than directly smoking the cigarette, in part, because the smoke is not diluted by other air received into the lungs.

The court notes that the study proffered by the defendant clearly applies only to non-filter cigarette smokers and reproduces smoking habits of three decades ago, does not reflect contemporary smokers, and refers to *undiluted* smoke measured in a "smoking machine," as opposed to the effects from modern smokers on those breathing normal air contaminated by secondhand smoke. Thus, the court questions the validity of the Surgeon General's study in this instance.

However, the court did obtain and review the December 1992 release of the United States Environmental Protection Agency entitled, "Respiratory Health Effects of Passive Smoking." There the USEPA comprehensively considers all of the various health aspects of smoking in an enclosed environment. In Section 7, the report presents findings on the non-cancerous respiratory effects of passive smoke. The report notes, in relevant part:

"It is plausible that passive smoking may produce effects similar to those known to be elicited by active smoking. However, several differences both between active and passive forms of exposure and among the individuals exposed to them need to be considered.

"The concentration of smoke components inhaled by subjects exposed to (passive smoke) is small compared with that from active smoking." *Id.* at 7.2.

"Recent studies have confirmed the conclusion * * * that adult nonsmokers exposed to (passive smoke) may have small reductions in lung function. * * *

"However, because of the self selection of smokers and other factors, it is difficult to make direct quantitative comparisons between the effects of active and passive smoking. The different nature of (active and passive) smoking * * * must be taken into account when comparing effects of active and passive smoking." *Id.* at 7.9.2.

In its conclusion, the report states that there can be subtle changes in lung function as the result of long-term exposure to secondhand smoke. It does not conclude that secondhand smoke impairs alveolar function in the short term.

The court therefore holds, as a matter of law, that mere breathing of second-hand smoke does not constitute oral intake that invalidates the results of a breath test. Otherwise, as stated in the plaintiff's hearing brief, one could argue that the consumption of any multitude of air particles or air vapors can improperly affect a breath test. Extending the defendant's scenario, it would be virtually impossible to have a valid BAC test result, since the air in the room could be contaminated by any number of environmental contaminants.

In this case, the court holds that the BAC DataMaster Test Report of the defendant was performed in proper compliance with Ohio Department of Health regulations, including the proper twenty-minute required observation of the defendant. The court finds that exposure to passive smoke within the twenty-minute period prior to the administration of the breathalyzer test does not invalidate the test result. The court denies the motion to suppress the BAC DataMaster test.

*So ordered.*