THE STATE OF OHIO *v.* VANNATA.

(No. C-83-TRC-12740—Decided
July 19, 1983.)

Hamilton County Municipal Court.

*Mr. Arthur M. Ney,* prosecuting attorney, and *Mr. John Arnold,* for plaintiff.

*Messrs. Gehrig, Parker & Baldwin* and *Mr. David N. Parker,* for defendant.

ALBANESE, J. This case was submitted on a motion to dismiss that challenges the constitutionality of R.C. 4511.19(A)(3). The defendant, Timothy J. Vannata, was charged on March 19, 1983, with violating R.C. 4511.19(A)(3) (effective March 16, 1983) to wit: driving under the influence of alcohol in Deer Park, Hamilton County, Ohio.

It is common knowledge throughout this community, and in Ohio, as well as the entire nation, that the startling number of drunken drivers on the high-ways is appalling. Statistics reported in newspapers, magazines and on television reveal the major problems created by drunk drivers in causing accidents, injuries and deaths.

For years the drinking driver has been tolerated, with the result that we have slaughtered more people on the road than have died in all our wars. *South Dakota* v. *Neville* (1983), 74 L.Ed. 2d 748, 755.

Therefore, it is of great concern and significance that Ohio's new drunk driving law (R.C. 4511.19, effective March 16, 1983) be constitutionally examined and judicially interpreted at the first instance.

It is not necessary to detail the facts for purposes of this motion. However, the defendant, when arrested, recorded a concentration of more than .10 gram by weight of alcohol in his breath. The court has reviewed the testimony, exhibits, briefs and arguments of counsel.

I

The defendant's initial argument is the constitutional challenge that R.C. 4511.19(A)(3) is vague and a denial of due process of law under the Fourteenth Amendment to the United States Constitution.

The defendant claims that the average citizen cannot understand the law and determine the standards of guilt "without consulting with an expert"; and that "a person of ordinary intelligence" cannot "ascertain for himself how much alcohol he can consume before he violates the law."

The state argues that R.C. 4511.19 (A)(3) is not vague and does set forth the standards of conduct for persons to be aware of *before* driving on the roadways.

The law applicable as to the issue of vagueness has been stated in *State* v. *Young* (1980), 62 Ohio St. 2d 370 [16 O.O.3d 416], at page 372 that:

"* * * '[T]he proper standard for determining if a statute is vague is found in *Connally* v. *General Construction Co.*

(1926), 269 U.S. 385, and *Grayned* v. *[City of] Rockford* (1972), 408 U.S. 104.' *State* v. *Phipps* (1979), 58 Ohio St. 2d 271, 273 [12 O.O.3d 273]. In *Connally* v. *General Construction Co., supra,* the United States Supreme Court, at page 391, stated:

" 'That the terms of a penal statute creating a new offense must be sufficiently explicit to inform those who are subject to it what conduct on their part will render them liable to its penalties, is a well-recognized requirement, consonant alike with ordinary notions of fair play and the settled rules of law. And a statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application, violates the first essential of due process of law. * * *' (Citations omitted.)"

Justice Marshall said in *Grayned* v. *City of Rockford* (1972), 408 U.S. 104, 108-109, that:

"It is a basic principle of due process that an enactment is void for vagueness if its prohibitions are not clearly defined. * * * A vague law impermissibly delegates basic policy matters to policemen, judges and juries for resolution on an *ad hoc* and subjective basis, with the attendant dangers of arbitrary and discriminatory application."

Finally, in *United States* v. *Harriss* (1954), 347 U.S. 612, 618, the court said:

"On the other hand, if the general class of offenses to which the statute is directed is plainly within its terms, the statute will not be struck down as vague, even though marginal cases could be put where doubts might arise. * * * And if this general class of offenses can be made constitutionally definite by a reasonable construction of the statute, this Court is under a duty to give the statute that construction."

So, then, we must look to the relevant sections of R.C. 4511.19(A)(3) and apply the foregoing constitutional principles.

The state has the burden of proving beyond a reasonable doubt that:

(1) The defendant operated a motor vehicle; and

(2) The defendant operated said motor vehicle and had a concentration of ten hundredths of one gram or more by weight of alcohol per two hundred ten liters of his breath.

For persons who consume alcoholic beverages it must be assumed that they know that what they are drinking has an effect on the body's chemistry.

This court can take judicial notice that many articles published and distributed in general circulation (insurance company pamphlets, driving safety handbooks, newpapers, etc.) contain charts, graphs and explanations of blood alcohol levels for body weights.

The statute sets forth a specific level of concentration of alcohol (.10 gram or more) that prohibits the driver from operating a motor vehicle on the highway.

Basically, the Ohio Legislature has determined that .10 percent quantity of alcohol has sufficient adverse effect upon *any* person to make his driving a definite hazard to himself and others. Delaware has a similar statute wherein the court concluded in *Coxe* v. *State* (Del. 1971), 281 A.2d 606, 607, that:

"We cannot say that this determination [forbidding any person from driving a motor vehicle if his blood concentration contains .10 percent or more of alcohol] is unfounded or contrary to the facts; a number of studies and many statistics have recently been published by experts in this field which support that conclusion."

The defendant concedes that the state can prohibit drunken drivers from the roadways by exercising inherent police powers, but claims the power is misused.

This court concludes that the use of these powers is reasonable and in the best interests of safe driving. See, also, *State* v. *Franco* (1982), 96 Wash. 2d 816, 639 P. 2d 1320.

A recent case of *Burg* v. *Municipal*

*Ct.* (Cal. App. 1983), 192 Cal. Rptr. 531, states at page 534 that:

"It is true that a drinking driver may, even with use of an available chart, err in his or her estimation of BA [blood alcohol] and thereby 'innocently' commit a * * * violation [of the drunk driving statute]. * * * [B]ut 'the law is full of instances where a [person's] fate depends on his * * * estimating rightly * * * some matter of degree.' * * * (*County of Nevada* v. *MacMillen* * * * [(1974), 11 Cal. 3d 662, 673, 114 Cal. Rptr. 345, 522 P. 2d 1345]; see also *People* v. *Daniel* (1959), 168 Cal. App. 2d Supp. 788, 799-800, 337 P. 2d 247). This fact does not render such laws unconstitutional."

Further, the *Burg* case states, at page 533, in quoting *Roth* v. *United States* (1957), 354 U.S. 476, 491-492, that:

" '* * * [L]ack of precision is not itself offensive to the requirements of due process. ''* * * [T]he Constitution does not require impossible standards"; all that is required is that the language "conveys sufficiently definite warning as to the proscribed conduct when measured by common understanding and practices. * * *'' ' "

Other states with similar drunk driving statutes have declared their statutes constitutional. See *Roberts* v. *State* (Fla. 1976), 329 So. 2d 296; *State* v. *Basinger* (1976), 30 N.C. App. 45, 226 S.E. 2d 216.

The state of Utah has a similar drunk driving law, and its Supreme Court held in *Greaves* v. *State* (Utah 1974), 528 P. 2d 805, 808, that:

"We can see no reason why a person of ordinary intelligence would have any difficulty in understanding that if he has drunk anything containing alcohol, and particularly any substantial amount thereof, he should not attempt to drive or take control of a motor vehicle."

This court is of the opinion that the statute sufficiently defines the standards of conduct for a drinking driver to understand. The crime is explicitly stated and not unconstitutionally vague.

## II

The defendant next argues that the statute, if it is not vague, is nevertheless unconstitutional because it mandates a presumption, *i.e.,* an irrebuttable presumption, of guilt.

Basically, the need for presumptions in criminal cases is premised on the practical impossibility of proving certain facts except by inferences drawn from other basic facts. See *United States* v. *Gainey* (1965), 380 U.S. 63.

An example of a basic fundamental concept is: " '[t]he principle that there is a presumption of innocence in favor of the accused is the undoubted law * * *.' " *Taylor* v. *Kentucky* (1978), 436 U.S. 478, 483.

Ohio has codified this principle in R.C. 2901.05, and mandated that "the burden of proof for all elements of the offense is upon the prosecution." However, this "presumption of innocence" is a rebuttable issue that the state can overcome by establishing proof of guilty criminal conduct beyond a reasonable doubt.

It is important in these cases to note the meaning and difference between "presumption" and "irrebuttable presumption."

Summarizing from *State* v. *Smith* (1966), 8 Ohio Misc. 148 [37 O.O.2d 220], a presumption is a deduction based on acceptable standards and/or practices, without having to offer proof of facts or reasons to justify the conclusion.

The circuit court, in *Dalrymple* v. *State* (1904), 5 Ohio C.C. (N.S.) 185, reasoned that presumptions are neither argument nor evidence, but are in the *nature* of evidence. They stand as proof of the fact in question until they are overcome by *other* evidence.

The "other evidence" would be the "rebutting" facts offered to challenge the intended presumption.

The Ohio Supreme Court has determined the degree of proof necessary to rebut a presumption in *Kennedy* v.

*Walcutt* (1928), 118 Ohio St. 442, in paragraph five of the syllabus:

"The degree of proof necessary to remove a presumption is not to be confused with the degree necessary to sustain the burden of proof. * * * [A] rebuttable presumption arising out of such issue may be overcome by evidence which *counterbalances* the evidence to sustain the presumption * * *." (Emphasis added.)

Defining irrebuttable presumptions can be first illustrated by citing examples.

A child under seven years of age is incapable of forming an intent to commit a crime. *L. E. & W. R. R. Co.* v. *Mackey*, (1895), 53 Ohio St. 370.

Every person is presumed to know the law. *Hartford Protection Ins. Co.* v. *Harmer* (1853), 2 Ohio St. 452.

There is an irrebuttable presumption that the defendant has good character unless the defendant places it in issue. *State* v. *Markowitz* (1941), 138 Ohio St. 106 [20 O.O. 63]. See, also, Evid. R. 404(A) and 803(20).

These cases illustrate the rule of law, based on policy, that an irrebuttable presumption is so peremptory that it may not be overcome. Conclusive presumptions that operate against a criminal defendant are unconstitutional. *County Court of Ulster* v. *Allen* (1979), 442 U.S. 140; *Sandstrom* v. *Montana* (1979), 442 U.S. 510.

The defendant argues that R.C. 4511.19(A)(3) sets forth language and provisions that operate as irrebuttable presumptions. The pertinent language in R.C. 4511.19(A) is:

"No person shall operate any vehicle * * * if * * *: (3) The person has a concentration of ten-hundredths of one gram or more by weight of alcohol per two hundred ten liters of his breath;"

For purposes of this motion the defendant agrees that the other elements enumerated in R.C. 4511.19 are not subject to dispute.

Therefore, all other factors being proper in R.C. 4511.19, the defendant argues that the prohibition of having .10 gram concentration or more of alcohol by weight in the breath while driving a vehicle is an unconstitutional, irrebuttable presumption of being under the influence of alcohol.

This court does not agree. There is no reported Ohio case law as precedent; however, there is prior case law decided under the former R.C. 4511.19 that the court believes is convincing.

For example, it is stated in *Mentor* v. *Giordano* (1967), 9 Ohio St. 2d 140 [38 O.O.2d 366], in the sixth paragraph of the syllabus that:

"Before the results of a Breathalyzer test given an accused are admissible in evidence against him, it is incumbent on the state to show that the instrument was in proper working order and that its manipulator had the qualifications to conduct the test."

Morevoer, in *State* v. *Brown* (1975), 49 Ohio App. 2d 104, at 105-106 [3 O.O.3d 161], the court wrote:

"The prosecutor (upon direct examination of Sgt. Holland of the Ohio State Highway Patrol, a licensed operator), asked that patrol sergeant if he was familiar with all the *regulations and methods approved by the* state *Director of Health* regarding the breathalyzer. He replied that he was, and that he conducted the breath test in the case in accordance with those regulations and methods. Defense counsel's objection to that testimony was overruled.

"We agree with the trial court that at that point those two broad, general questions and answers were a sufficient compliance with our holding in *State* v. *Jones* (1973), 37 Ohio App. 2d 127 [66 O.O.2d 287]. If believed by the jury, by the required degree of proof, it is sufficient to sustain a conviction. However, if by cross-examination, or otherwise, the defense places such compliance in issue, it then is incumbent upon the state, in order to maintain its burden of proof, to offer the

*methods and regulations* in evidence and prove compliance. In this case, the defense merely objected, but never actually raised the issue by cross-examination, or otherwise." (Emphasis added.)

A more recent case of *State* v. *Griggy* (1982), 1 Ohio Misc. 2d 16, follows the same reasoning that without the *proper* foundations, breathalyzer test results are not admissible.

The methods of intoxilyzer analysis have been approved by the Ohio Department of Health as set forth in R.C. 3701.143. As one appellant court has stated in *State* v. *Brockway* (1981), 2 Ohio App. 3d 227, 231-232:

"It is evident from the statutory scheme upon the subject that it was the intention of the General Assembly to meet and address the problem of the drunken drivers upon the roads of Ohio and to do so by legislatively providing for the admission into evidence of alcohol test results, including breath tests, if conducted in accordance with procedures adopted by the Director of Health, of one accused of violating R.C. 4511.19. It must be presumed that the General Assembly acted upon adequate investigation and with an awareness that not all scientific authorities accepted the tests as reliable, that breath tests were not one hundred percent accurate, but reasonably so with minor deviations. Further, it is evident that the General Assembly intended, because of the numerous types of equipment and procedures available for such alcohol tests, to achieve uniformity in testing in Ohio by delegating to the Director of Health authority to choose and approve of the specific tests and procedures to be used in Ohio. Such delegation is not novel and is utilized in such states as Alabama, Connecticut, Missouri and Florida. See *State* v. *Bender* (Fla. 1980), 382 So. 2d 697."

Under the new R.C. 4511.19, then, the state still has the burden of proving beyond a reasonable doubt (as to the level of alcohol concentration) that:

a. The machine was properly calibrated within a required number of tests or days;

b. The person who calibrated the machine was qualified to do so;

c. The requirements of the department of health were followed on the test in question;

d. The person giving the test in question was qualified to give the test;

e. The test in question was given within two hours of the driving;

f. The defendant placed nothing in his mouth to affect the test for twenty minutes prior to taking the test; and

g. The machine worked properly on the test in question and registered a result.

Only after the state has proved the foregoing can the results of the intoxilyzer test be admitted into evidence.

The trier of the facts must then determine whether the evidence proves beyond a reasonable doubt that the breath alcohol level is equal to or more than .10 gram concentration by weight, and that the defendant operated a motor vehicle in that condition.

All of these factors are dependent on how the trier of the facts assesses the credibility of witnesses consistent with Evid. R. 104(E) and the guidelines set forth in 1 OJI 5.30:

a. Appearance of witness;

b. Manner of testifying;

c. Reasonableness;

d. Opportunity to see, hear and know;

e. Accuracy of memory;

f. Frankness or lack thereof;

g. Intelligence, interest, bias; and

h. Facts and circumstances.

The issues of credibility, therefore, are always subject to the defendant's ability to demonstrate that reasonable doubt may exist in the state's case.

Hence, R.C. 4511.19(A)(3) is not an irrebuttable presumption because the state is *not* relieved "from the duty of proving that the driver had the requisite * * *

[percentage of] alcohol in his system; it simply removes the necessity of providing an expert at each trial to testify to the effect of that percentage of alcohol upon the defendant's ability to drive." *State* v. *Ball* (W.Va. 1980), 264 S.E. 2d 844, at page 846.

As stated in *State* v. *Myers* (1971), 26 Ohio St. 2d 190 [55 O.O.2d 447], at page 198:

"The purpose of the presumption is to eliminate the need for expert testimony which would otherwise be necessary to relate the numerical figure representing a percentage of alcohol by weight in the blood as shown by the result of a chemical test, with the *common understanding of being under the influence of alcohol.*" (Emphasis added.) (Citations omitted.)

Quite simply stated, then, when "the tests results are in evidence, * * * the presumption supplies the correlation be-

tween a scientific fact, the results of the test, and human behavior * * *." *Id.* at 198-199.

### III

Many states throughout this nation have uniformly upheld similar drunk driving statutes as constitutionally acceptable.

It is well-settled that a legislative statute is entitled to a strong presumption of constitutionality. *State* v. *Renalist, Inc.* (1978), 56 Ohio St. 2d 276, 278 [10 O.O.3d 408].

This court believes that R.C. 4511.19 is fundamentally fair and reasonably certain, and the legislative intent and purpose is within proper constitutional standards and principles.

*Motion to dismiss overruled.*