Edward Earl **FORTE**, Appellant,

v.

The **STATE** of Texas, State.

No. 2–84–012–CR.

Court of Appeals of Texas,
Fort Worth.

Feb. 21, 1985.

Richard Alley, Fort Worth, for appellant.

Chris Marshall, Asst. Dist. Atty., Fort Worth, for the State.

## OPINION ON REHEARING

ASHWORTH, Justice.

In its Motion for Rehearing, the State contends the original opinion was in reality a minority opinion by Justices Ashworth and Spurlock; that Justice Burdock's concurring opinion did not state agreement with the supposedly majority opinion but stated a reversal for a different reason. The State further contends that it has been advised by the clerk's office of this Court that Justice Gray, who assumed office on January 1, 1985, did not participate in the opinion which was issued on January 10, 1985, and that Justice Hughes, who retired on December 31, 1984, could not participate in the opinion. In order to clarify the composition of the Court and the opinions of the members, we grant the State's Motion for Rehearing and the opinion heretofore issued on January 10, 1985, is withdrawn and the following opinion substituted.

Appellant, Edward Earl Forte, was found guilty by a jury of driving while intoxicated. TEX.REV.CIV.STAT.ANN. art. 6701*l* –1(b) (Vernon Supp.1984). The court assessed punishment at 30 days confinement and a two hundred dollar fine.

We reverse and remand inasmuch as we hold that appellant was improperly denied a limited right to counsel prior to making a decision as to whether to take an intoxilyzer examination.

The evidence reveals that Myrtle Fenton was driving her car on January 10, 1984 when she was struck by another vehicle on the rear passenger side of her car, causing her car to spin and stop in a nearby yard. Fenton was unable to see the driver of the vehicle that hit her.

Immediately prior to the accident, Martha Raincrow was traveling in her car on the same road when she saw appellant's vehicle in her rearview mirror weaving all over the road. Raincrow testified that she had to move her car to the side of the road in order to avoid a collision with appellant's vehicle. Raincrow watched appellant pass her car, saw him run a stop sign, and then observed him collide with Fenton's car.

After the accident, Raincrow followed appellant and when he apparently lost control of his vehicle and ran. into a ditch, she stopped her car to get his license plate number. Raincrow thereupon proceeded to telephone the police.

Lieutenant William Crawford testified that when he arrived at the scene he saw appellant in the driver's seat of a vehicle that evidently had landed in a chain link fence in a ditch. Inasmuch as appellant would not get out of the vehicle upon request, Crawford had to open the door and pull him out. Crawford related that appellant's pants were undone and his fly was open, appellant smelled strongly of alcohol, had slurred and choppy speech, and could not stand up without support. Appellant was arrested and subsequently submitted to an intoxilyzer test, the results of which indicated that the alcohol concentration level of his breath was 0.10%.

Appellant raises eight grounds of error contending that: (1) during closing argument the State's attorney impermissibly gave an opinion regarding appellant's guilt; (2) the evidence is insufficient to sustain the conviction; (3) the court erred in failing to instruct the jury regarding the rebuttability of the presumption of intoxication; (4) the court erred in admitting into evidence the results of the intoxilyzer test because appellant had previously invoked and been denied his right to counsel; (5) the court erred in not instructing the jury on the issue of appellant's voluntary consent to taking the breath test; and the current D.W.I. statute is unconstitutional because: (6) it provides for a conclusive presumption of intoxication, (7) its body contains more subjects than are given fair notice of in its caption, and (8) the term "public place" is overly broad, vague and indefinite. In view of the constitutional challenges appellant makes, we will address these arguments first.

In his sixth ground of error, appellant contends that the statute under which he was convicted creates a conclusive presumption of intoxication once an accused's alcohol concentration is established at

0.10% or more, and therefore the statute is unconstitutional. We disagree.

Prior to January 1, 1984, TEX.REV.CIV. STAT.ANN. art. 6701*l*–1 provided that it was an offense for a person to drive or operate a motor vehicle upon any public road or highway while such person was intoxicated or under the influence of intoxicating liquor. Speed and Driving While Intoxicated, ch. 682, sec. 3, 1979 Tex.Gen. Laws 1608, 1609, *amended by* Act of June 16, 1983, ch. 303, sec. 3, 1983 Tex.Gen.Laws 1568, 1574–75. Further, the statutory evidentiary rules then in effect provided that if at the time of the person's arrest there was 0.10% or more by weight of alcohol in his blood, it was *presumed* that the person was under the influence of intoxicating liquor. Driving While Intoxicated, ch. 709, sec. 1, 1971 Tex.Gen.Laws 2340, 2341, *amended by,* Act of June 16, 1983, ch. 303, sec. 4, 1983 Tex.Gen.Laws 1568, 1581–82.

The 68th Texas Legislature passed S.B. No. 1, effective Jan. 1, 1984, which amended the driving while intoxicated statute and provided, in pertinent part:

Art. 6701*l*–1. Intoxicated driver; penalty

(a) In this article:

(1) *"Alcohol concentration" means:*

(A) the number of grams of alcohol per 100 milliliters of blood;

(B) *the number of grams of alcohol per 210 liters of breath;* or

(C) the number of grams of alcohol per 67 milliliters of urine.

(2) *"Intoxication means:*

(A) not having the normal use of mental or physical faculties by reason of the introduction of alcohol, a controlled substance, a drug, or a combi-

nation of two or more of those substances into the body; or

(B) *having an alcohol concentration of 0.10 percent or more.*

\* \* \* \* \* \*

(4) "Public place" has the meaning assigned by Section 1.07(a)(29), Penal Code.

(b) *A person commits an offense if the person is intoxicated while driving or operating a motor vehicle in a public place.* The fact that any person charged with a violation of this section is or has been entitled to use a controlled substance or drug under the laws of this state is not a defense.

TEX.REV.CIV.STAT.ANN. art. 6701*l*–1 (Vernon Supp.1984).

Under our prior D.W.I. statute, the amount of alcohol in a person's blood created a *presumption* regarding whether a person was under the influence of intoxicating liquor. Under the present statutory scheme, however, the presumption has been abolished. Instead, the statute sets out two alternative methods of committing the offense of driving while intoxicated. The State now has the burden of proving that the defendant: (1) was in control of the vehicle; (2) was operating the vehicle in a public place; and either: (3)(a) did not have the normal use of his mental or physical faculties by reason of the introduction of alcohol into his body, OR, (3)(b) had an alcohol concentration of 0.10% or more. At the urging of the United States Congress,[1] statutes of this kind have recently been enacted by the majority of states in the United States and by the District of Columbia.[2]

---

1. 23 U.S.C.A. sec. 408(e)(1)(C) (West Supp.1984) (making an enactment of a 0.10% blood-alcohol law mandatory for any state wishing to receive federal highway funds to support alcohol traffic safety programs).

2. Alabama (ALA.CODE tit. 32–5A–191(a)(1) (Supp.1984)); Alaska (ALASKA STAT. sec. 28.-35.030(a) (1984)); Arizona (ARIZ.REV.STAT. ANN. sec. 28–692(B) (Supp.1984–85)); Arkansas (ARK.STAT. sec. 75–2503(b) (Supp.1983)); Colorado (COLO.REV.STAT. tit. 42–4–1202(1.5)(a)

(1984)) (0.15%); Connecticut (CONN.GEN. STAT.ANN. sec. 14–227a(g) (1983)); Delaware (DEL.CODE ANN. tit. 21, sec. 4177(b) (1979)); District of Columbia (D.C.CODE ANN. sec. 40–716(b)(1) (Supp.1984)); Florida (FLA.STAT. ANN. sec. 316.193(1)(b) (West 1984)); Illinois (ILL.REV.STAT. ch. 95½, sec. 11–501(1) (Supp. 1984–85)); Iowa (IOWA CODE sec. 321.-281(1)(b) (Supp.1984–85)) (0.13%); Maine (ME. REV.STAT.ANN. tit. 29, sec. 1312–B(1)(B), (2)(C) (Supp.1984–85)); Michigan (MICH.STAT. ANN. sec. 9.2325(2) (Callaghan Supp.1984–85)

Appellant asserts that art. 6701*l*–1(a)(2)(B) is an impermissible conclusive presumption which violates the Sixth and Fourteenth Amendments to the United States Constitution, and the Texas Constitution art. I, secs. 3, 10 and 19. When the constitutionality of a statute is attacked, the Court must begin with the presumption that the statute is valid and that the Legislature has not acted unreasonably or arbitrarily in enacting the statute. *Ex parte Granviel,* 561 S.W.2d 503, 511 (Tex.Crim. App.1978). The burden rests upon the individual who challenges the act to establish its unconstitutionality. *Id.* It is the duty of this Court to construe a statute in such a way as to uphold its constitutionality if possible. *Ely v. State,* 582 S.W.2d 416, 419 (Tex.Crim.App.1979). Further, when construing a statute, we must determine and follow the legislative intent underlying the enactment of the statute. *Faulk v. State,* 608 S.W.2d 625, 630 (Tex.Crim.App.1980).

In support of his contention that the statute creates a conclusive presumption, appellant relies upon *Sandstrom v. Montana,* 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979), and *County Court of Ulster New York v. Allen,* 442 U.S. 140, 99 S.Ct. 2213, 60 L.Ed.2d 777 (1979). In *Sandstrom,* the jury was instructed that "the law presumes that a person intends the ordinary consequences of his voluntary acts". The United States Supreme Court held that this instruction was unconstitutional because the jury may have interpreted the judge's instruction as constituting either a burden-shifting presumption, or a conclusive presumption, and because either interpretation would have deprived the accused of the right to the due process of law. *Sandstrom,* 442 U.S. at 524, 99 S.Ct. at 2459. In

*Allen,* the court reached a different conclusion and upheld a New York statute which provided that if a weapon was found in an automobile, it was presumptive evidence of its possession by all persons occupying such automobile at the time the weapon is discovered.

Contrary to appellant's assertions, these authorities are not applicable to the instant case because art. 6701*l*–1(a)(2)(B) does not create a presumption of intoxication, nor does it eliminate the prosecutor's burden of proof when the accused is found to have a level of alcohol concentration of 0.10% in his system. Instead, the statute defines in precise terms the conduct proscribed. In other states that have enacted statutes similar to art. 6701*l*–1, the courts have drawn the same conclusion. *See Fuenning v. Arizona,* 139 Ariz. 590, 680 P.2d 121 (1983); *Coxe v. Delaware,* 281 A.2d 606 (Del.1971); *Burg v. Municipal Court,* 35 Cal.3d 257, 198 Cal.Rptr. 145, 673 P.2d 732 (1983); *North Carolina v. Basinger,* 30 N.C.App. 45, 226 S.E.2d 216 (1976); *Ohio v. Vannata,* 8 Ohio Misc.2d 22, 456 N.E.2d 1358 (1983); *Oregon v. Abbott,* 15 Or.App. 205, 514 P.2d 355 (1973); *South Dakota v. Gerdes,* 252 N.W.2d 335 (S.D.1977); *Greaves v. Utah,* 528 P.2d 805 (Utah 1974); *Washington v. Franco,* 96 Wash.2d 816, 639 P.2d 1320 (1982). Additionally, the Attorney General of Texas has addressed this identical issue and concluded that the statute in question is not constitutionally objectionable. Op.Tex.Att'y Gen. No. JM–68 (1983).

We are unable to agree with appellant's contention that art. 6701*l*–1(a)(2)(B) creates an impermissible conclusive presumption of intoxication. The statute's effect is to forbid any person to operate a motor vehicle if

[257.625b] ); Missouri (MO.ANN.STAT. sec. 577.012(1) (Vernon Supp.1984)); Nebraska (NEB.REV.STAT. sec. 39.669.07) (Supp.1982)); New York (N.Y.VEH. & TRAF. sec. 1192(2) (Supp.1984–85)); North Carolina (N.C.GEN. STAT. sec. 20–138.1(a)(2) (1983)); North Dakota (N.D.CENT.CODE sec. 39–08–01(1)(a) & (2)(a) (Supp.1983)); Oklahoma (OKLA.STAT.ANN. tit. 47, sec. 11–902(A)(1) (West 1984–85)); Oregon (OR.REV.STAT. secs. 487.540, 487.545 (1983)) (0.08%); Pennsylvania (75 PA.CONS.STAT.ANN.

sec. 3731(a)(4) (Supp.1984–85)); South Dakota (S.D. CODIFIED LAWS ANN. sec. C. 32–23–1(1) (1984)); Texas (TEX.REV.CIV.STAT.ANN. art. 6701L–1(2)(B) (Vernon Supp.1984)); Utah (UTAH CODE ANN. sec. 41–6–44(1) (Supp. 1983)) (0.08%); Vermont (VT.STAT.ANN. tit. 23, sec. 1201(a)(1) (Supp.1984)); Washington (WASH.REV.CODE ANN. sec. 46.61.502(1) (Supp.1984–85)); Wisconsin (WIS.STAT.ANN. sec. 346.63(1)(b) (Supp.1984–85)).

the alcohol concentration in his blood, breath, or urine is 0.10% or more. This represents a legislative determination that such quantity of alcohol has a sufficient adverse effect upon a person as to make his driving a definite hazard to himself and others.[3] Conviction is possible only when the jury finds beyond a reasonable doubt that the defendant's alcohol concentration at the time of driving or operating a motor vehicle in a public place was 0.10% or more. This is not based upon any presumption, conclusive or otherwise, and it applies to all persons with an alcohol content of 0.10% or more who drive on Texas highways. Although under art. 6701*l*–1(a)(2)(B) it is no longer necessary to prove that the defendant did not have the normal use of mental or physical faculties by reason of the introduction of alcohol into his body, the State must still prove beyond a reasonable doubt that at the time the defendant was driving his alcohol concentration exceeded 0.10%.

We find that art. 6701*l*–1(a)(2)(B) does not establish a conclusive presumption of intoxication, and we hold that the statute is constitutional. Appellant's sixth ground of error is overruled.

In his seventh ground of error appellant contends that TEX.REV.CIV.STAT.ANN. art. 6701*l*–5 (Vernon Supp.1984) is unconstitutional because certain changes in the old law were not included within the caption of S.B. No. 1. Specifically, appellant claims that because the provisions of this statute providing for the admissibility at trial of evidence of an accused's refusal to take or an officer's refusal to administer a chemical test do not appear in the caption of the ratified bill, fair notice is not provided. *See* TEX.REV.CIV.STAT.ANN. art. 6501*l*–5, sec. 3(f) and (g) (Vernon Supp. 1984).

The prior statute provided as follows:

(f) If for any reason the person's request to have a chemical test for intoxication is refused by the officer or any other person acting for or on behalf of the state, such fact may be introduced into evidence on the trial of such person.

Driving While Intoxicated, ch. 709, sec. 1, 1971 Tex.Gen.Laws 2340, 2341, *amended by* Act of June 16, 1983, ch. 303, sec. 4, 1983 Tex.Gen.Laws 1568, 1583–84.

The amended version recites:

(f) If for any reason the person's request to have a chemical test is refused by the officer or any other person acting for or on behalf of the state, such fact may be introduced into evidence on the trial of such person.

(g) If the person refuses a request by an officer to give a specimen of breath or blood; whether the refusal was express or the result of an intentional failure of the person to give the specimen, that fact may be introduced into evidence at the person's trial.

TEX.REV.CIV.STAT.ANN. art. 6701*l*–5, secs. 3(f), (g) (Vernon Supp.1984).

We initially note that sec. 3(f) is virtually identical in both the prior version and in the amended version of the statute. Therefore, we overrule ground of error seven as it pertains to TEX.REV.CIV.STAT.ANN. art. 6701*l*–5, sec. 3(f) (Vernon Supp.1984).

In support of his theory that the caption to S.B. No. 1 provides insufficient notice of the subjects embraced within sec. 3(g), appellant relies solely upon *Ex parte Crisp*, 661 S.W.2d 944 (Tex.Crim.App.1983).

In the instant case, the caption's relevant portions provide as follows:

DRIVING WHILE INTOXICATED

CHAPTER 303

S.B. No. 1

AN ACT

relating to offenses of driving while intoxicated, ... providing ... for tests and trial procedures for dealing with an accused person, ...

---

**3.** We note that in addressing the prior D.W.I. statute the Texas Court of Criminal Appeals has held that "[w]hether a particular blood alcohol level should carry the weight of a presumption is a matter for the legislature." *Turpin v. State*, 606 S.W.2d 907, 912 (Tex.Crim.App.1980).

Act of June 16, 1983, ch. 303, 1983 Tex. Gen.Laws 1568.

> The Texas Constitution provides that: No bill, (except general appropriation bills, which may embrace the various subjects and accounts, for and on account of which moneys are appropriated) shall contain more than one subject, which shall be expressed in its title. But if any subject shall be embraced in an act, which shall not be expressed in the title, such act shall be void as to so much thereof, as shall not be expressed.

TEX. CONST. art. III, sec. 35.

This constitutional provision requires that a bill's caption be specific enough to give a reasonable reader fair notice of the subject and contents of the bill. *Crisp,* 661 S.W.2d at 946. When a statute is attacked under art. III, sec. 35, the Court should construe the statute liberally so as to uphold it if possible. *Id.; Stein v. State,* 515 S.W.2d 104, 107 (Tex.Crim.App.1974). As stated in *Crisp,* a somewhat stricter rule of conformity of title to subject matter legislated on within an act is applied to amendments in comparison to the original acts. *Crisp,* 661 S.W.2d at 946, citing *Bates v. State,* 587 S.W.2d 121, 128 (Tex.Crim.App. 1979).

The issue for our determination, keeping in mind the constitutional provision relating to captions and the above-stated rules, is whether the caption of S.B. No. 1 provides readers with fair notice of the subject matter contained within the portion of the Bill relating to TEX.REV.CIV.STAT.ANN. art. 6701*l*–5, sec. 3(g) (Vernon Supp.1984).

The court in *Crisp* held that the caption of H.B. 730,[4] which amended the Texas Controlled Substances Act, failed to give readers fair notice of the subject matter contained within the bill itself.[5] H.B. 730 modified several areas of the existing Controlled Substances Act, added ten new sections, and repealed at least one section. There were also several statutes in addition to the Controlled Substances Act which were modified by the bill. The *Crisp* court held that:

> The caption to the bill before us refers, at best, to changes in penalties and offenses relating to the Controlled Substances Act (at worst, the bill doesn't even give notice of those changes—see concurring opinion by Judge Clinton). No mention is made of changes made in the Code of Criminal Procedure or the Penal Code. Since the caption refers to one act and has the effect of modifying at least two other separate statutes not mentioned in the caption, it does not give readers fair notice of the subject matter contained within the bill. Even the most liberal construction of this caption and bill would not permit us to find that the caption fulfills Texas Constitutional requirements.

*Crisp,* 661 S.W.2d at 947.

The "fair notice" standard with which TEX. CONST. art. III, sec. 35 is to be applied, requires that the caption give reasonable notice of the contents of the bill to an average reader. *Crisp,* 661 S.W.2d at 947. There is no constitutional requirement that the caption of an amendatory act set out exactly what changes were made in the amended act, so long as the subject of the amendatory act is not "remote" from the subject of the original act. *Smith v.*

**4.** Act of May 29, 1981, ch. 268, 1981 Tex.Gen. Laws 696.

**5.** We note that a challenge has recently been made concerning the caption to the Texas Speedy Trial Act, TEX.CODE.CRIM.PROC.ANN. art. 32A.02 (Vernon Supp.1984) (The entire Act with the caption is located at: Act of June 16, 1977, ch. 787, 1977 Tex.Gen.Laws 1970.). *See Noel v. State,* —— S.W.2d ——, No. 827–83 (Tex. Crim.App., March 14, 1984, State's Motion for Rehearing granted) (not yet reported). In *Noel,* the merits of the State's contention that the caption was defective were not addressed inasmuch as the Texas Court of Criminal Appeals held that the State's failure to pursue the orderly procedure for discretionary review in raising the constitutional claim presented nothing for review. Four judges dissented, stating that a careful comparison of the holding in *Crisp* with the caption of the Speedy Trial Act makes it readily apparent that the Speedy Trial Act suffers from the exact malady diagnosed in *Crisp,* 661 S.W.2d at 53.

*Davis,* 426 S.W.2d 827, 833 (Tex.1968). As stated in *Smith,*

> 'It would be burdensome if not intolerable to require that the title (or caption of an act) should be as full as the act itself. The word "title" implies that no such requirement exists.' [Citation omitted]. It is not necessary that the caption of an amendatory bill apprise the reader of the precise effects of the body of the bill, so long as the general subject of the amending bill is disclosed.

*Id.* at 833.

In a footnote in *Crisp,* the Court of Criminal Appeals quoted a provision from *City of Brownsville v. Public Utility Commission,* 616 S.W.2d 402 (Tex.Civ.App.—Texarkana 1981, writ ref'd n.r.e.), as stating a useful way to apply this standard:

> 'If (an average legislator or interested citizen) interested in legislation on a particular subject would be prompted by the title to examine the body of the bill for provisions relating to that subject, then the title is sufficient. But if he would be likely to get the impression from the title that further reading is unnecessary because the bill does not relate to that subject then the bill is unconstitutional to the extent that it deals with that subject.'

*Crisp,* 661 S.W.2d at 948, fn 3.

We find that an average legislator or citizen who was interested in legislation regarding the effect of an accused's refusal to have a chemical test performed would be prompted by the caption of S.B. No. 1 to examine the body of the bill for provisions pertaining to that subject. Therefore, we hold that the caption of S.B. No. 1 provides fair notice of the subject and contents of TEX.REV.CIV.STAT.ANN. art. 6701*l*–5, sec. 3(g) (Vernon Supp.1984), and is not unconstitutional in this regard. Accordingly, we overrule appellant's seventh ground of error.

In his final constitutional challenge, appellant's eighth ground of error contends that the definition of the term "public place" in the current D.W.I. statute is overbroad, vague and indefinite, and is therefore unconstitutional.

The prior version of the D.W.I. statute applied to "any public road or highway in this State, ... or upon any street or alley within the limits of an incorporated city, town or village, ..." Speed and Driving While Intoxicated, ch. 682, sec. 3, 1979 Tex. Gen.Laws 1608, 1609 (amended 1983).

The current version of art. 6701*l*–1(b) specifies that: "A person commits an offense if the person is intoxicated while driving or operating a motor vehicle *in a public place.*" TEX.REV.CIV.STAT.ANN. art. 6701*l*–1(b) (Vernon Supp.1984) (emphasis added). Article 6701*l*–1(a)(4) provides that: " 'Public place' has the meaning assigned by section 1.07(a)(29), Penal Code." That section provides as follows:

> 'Public place' means any place to which the public or a substantial group of the public has access and includes, but is not limited to, streets, highways, and the common areas of schools, hospitals, apartment houses, office buildings, transport facilities, and shops.

TEX.PENAL CODE ANN. sec. 1.07(a)(29) (Vernon 1974).

Appellant asserts that the current definition of "public place" is so broad that it could result in a person's conviction for the operation of a motor vehicle upon private property which is nonetheless open to public view, and for that reason the statute penalizes both innocent and guilty behavior, in violation of the U.S. CONST. amends. VI and XIV, and TEX. CONST. art. I, secs. 3, 10 and 19. Other than these constitutional sections, appellant cites no case authority in support of his proposition, and we have found none.

The standard for determining whether a statute is void for vagueness is whether it gives a person of ordinary intelligence fair notice that his contemplated conduct is forbidden by the statute. *Papachristou v. City of Jacksonville,* 405 U.S. 156, 162, 92 S.Ct. 839, 843, 31 L.Ed.2d 110 (1972). The terms of a penal statute creating a new offense must be sufficiently explicit to inform those who are subject to it what conduct on their part will render them lia-

ble to its penalties. *Connally v. General Construction Company*, 269 U.S. 385, 391, 46 S.Ct. 126, 127, 70 L.Ed. 322 (1926). Generally, a statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application, violates the first essential of due process of law. *Id.*

The present version of art. 6701*l*–1 is broader than the prior version; however, we find that the statute is sufficiently specific to provide a reasonable person with notice of what constitutes a "public place". There was no motion to quash the misdemeanor information charging appellant with the offense of D.W.I., and the record reflects no objection to this document. We hold that the definition of "public place" in TEX.PENAL CODE ANN. sec. 1.07(a)(29), as it applies to art. 6701*l*–1(b), is not overly broad, vague or indefinite and is constitutional. Appellant's eighth ground of error is overruled.

Appellant's first ground of error complains of a statement made by the State's attorney during closing arguments in the guilt-innocence phase of the trial. Specifically, the following dialogue occurred:

MR. PURCELL [State's attorney]: Now, you are performing a very important function in our society and in our country. It is only in American [sic] where an accused person has the rights that Mr. Forte has. I have to prove him guilty. And I have to present evidence to you to show he is guilty. *We are not going to convict innocent people.* [Emphasis added.]

MR. ALLEY [Defense counsel]: Your Honor, I would object to the prosecutor referring to the guilt or innocence of the accused. That's a decision for the jury—

THE COURT: Sustained.

MR. ALLEY: We would request the court ask the jury to disregard that last comment in reference to his belief in guilt or innocence.

THE COURT: Disregard the prior statement by Mr. Purcell.

MR. ALLEY: Your Honor, that is extremely prejudicial to my client. We would respectfully ask for a mistrial.

THE COURT: Denied.

Appellant complains of the State's use of the phrase "We are not going to convict innocent people." To be permissible, jury argument must fall within one of the following four general catagories: (1) summation of the evidence; (2) reasonable deduction from the evidence; (3) answer to argument of opposing counsel; or (4) plea for law enforcement. *Darden v. State*, 629 S.W.2d 46, 52 (Tex.Crim.App.1982); *Alejandro v. State*, 493 S.W.2d 230, 231–32 (Tex.Crim.App.1973).

It is error for the prosecution to interject into the jury argument his personal opinion about a witness's credibility. *Menefee v. State*, 614 S.W.2d 167, 168 (Tex.Crim.App. 1981). In the instant case, it is conceivable that the jury might have interpreted the complained of argument as the prosecutor's personal opinion that appellant was not an innocent person. If that be the case, this unsworn testimony exceeded the permissible bounds of the above four areas, and was improper. However, such will not constitute reversible error unless, in light of the record as a whole, the argument is extreme or manifestly improper, violative of a mandatory statute, or injects new facts harmful to the accused into the trial proceeding. *Mathews v. State*, 635 S.W.2d 532, 539 (Tex.Crim.App.1982); *Todd v. State*, 598 S.W.2d 286, 296 (Tex.Crim.App. 1980). Ordinarily, any injury from an improper jury argument by a prosecutor is obviated when an objection thereto is sustained and the jury is instructed to disregard the argument. *Hodge v. State*, 631 S.W.2d 754, 759 (Tex.Crim.App.1982). The test for determining improper jury argument is whether the remarks made were so inflammatory that their prejudicial effect cannot reasonably be removed by an instruction by the trial court to disregard the statements made. *Id.*

In light of the record before us and the prompt action of the trial court in sustaining the objection and instructing the jury

not to consider the argument for any purpose, we find that the overruling of the motion for mistrial was not reversible error. *See Blackstock v. State*, 433 S.W.2d 699, 700 (Tex.Crim.App.1968). Appellant's first ground of error is overruled.

In his third ground of error appellant contends that the trial court erred in failing to charge the jury on the issue of the presumption of intoxication, pursuant to TEX.PENAL CODE ANN. sec. 2.05 (Vernon Supp.1984). This section states that when the Penal Code or another penal law establishes a presumption with respect to any fact which is submitted to the jury, the court shall charge the jury, in terms of the presumption and the specific element to which it applies, as follows:

(A) that the facts giving rise to the presumption must be proven beyond a reasonable doubt;

(B) that if such facts are proven beyond a reasonable doubt the jury may find that the element of the offense sought to be presumed exists, but it is not bound to so find;

(C) that even though the jury may find the existence of such element, the state must prove beyond a reasonable doubt each of the other elements of the offense charged; and

(D) if the jury has a reasonable doubt as to the existence of a fact or facts giving rise to the presumption, the presumption fails and the jury shall not consider the presumption for any purpose.

*Id.*

Such an instruction was mandatory under the prior D.W.I. statute for the reason that a failure to so instruct the jury could shift the burden of proof from the State to the accused. *See Eckman v. State*, 600 S.W.2d 937, 939 (Tex.Crim.App.1980). Appellant contends that the jury in the instant case should have been charged in accordance with Penal Code sec. 2.05. We disagree.

In view of our holding in this opinion that art. 6701*l*–1(a)(2)(B) does not create a presumption of guilt, but merely defines the offense of D.W.I. with specificity, Pe-

nal Code sec. 2.05 does not come into play. The jury was properly instructed that they must find from the evidence beyond a reasonable doubt that appellant was operating a motor vehicle in a public place while he was intoxicated, and that unless they so found beyond a reasonable doubt, or if they had a reasonable doubt thereof, they must acquit appellant. The jury was further instructed that all persons are presumed to be innocent and no person may be convicted of an offense unless each element of the offense is proved beyond a reasonable doubt.

We find that the trial court did not err in refusing to charge the jury on the issue of the presumption of intoxication. Appellant's third ground of error is overruled.

Appellant's fourth ground of error contends the trial court erred in admitting evidence of the results of an intoxilyzer test which was administered after appellant had requested and been denied the presence of counsel.

The question presented is whether a person has the right to consult with an attorney before making a decision to give or refuse a breath test. Article 6701*l*–5 provides in effect that a driver shall be deemed to have given consent to a breath or blood test if arrested for driving while intoxicated. If the person refuses to give the specimen, he is subject to the suspension of his driver's license for a period of 90 days after an administrative hearing. The act further provides that the results of the test are admissible upon trial, and the failure or refusal to give the specimen is likewise admissible upon trial. Article 6701*l*–1 provides that a person having an alcohol concentration of 0.10% or more is intoxicated.

We have found no Texas cases which construe these portions of the statute since it became effective on January 1, 1984. The case of *Growe v. State*, 675 S.W.2d 564 (Tex.App.—Houston [14th Dist.] 1984, no pet.) addressed the question as it existed under the prior law. The court there held that the defendant did not have a constitu-

tional right to counsel prior to making the decision to give a specimen. In its opinion, however, the court noted that under the statute then in effect, the refusal could not be admitted into evidence. Also, as previously discussed in the instant case, the law as it then existed provided that an alcohol concentration of 0.10% might be considered as a presumption of intoxication. Driving While Intoxicated, ch. 709, sec. 1, 1971 Tex. Gen.Laws 2340, 2341 (amended 1983). The court in *Growe* specifically stated that no ruling was being made with regard to the effect of the new law.

When we look for precedent from other jurisdictions, we find there is a division of opinion. While there is some difference in the laws of the various states answering the issue, they all generally address the same issue. *State of Maine v. Jones*, 457 A.2d 1116 (Me.1983), held that neither Maine's implied consent law nor its constitution nor the Federal constitution provided a person the right to consult with an attorney before deciding whether to take a blood-alcohol test; however, the case outlined the diverse opinions on the issue.[6] While these opinions are of value in determining the principles to be used in formulating an answer to the issue, they do not present hard and fast precedent which must be followed by this State.

The answer to the issue of whether the defendant should be afforded the right to counsel depends upon whether this is a critical pretrial stage. The accused is guaranteed that he need not stand alone against the State at any stage of the prosecution, formal or informal, in court or not, where counsel's absence might derogate from the accused's right to a fair trial. *United States v. Wade*, 388 U.S. 218, 226, 87 S.Ct. 1926, 1932, 18 L.Ed.2d 1149 (1967).

In determining whether the stage prior to the blood-alcohol test is critical, we briefly review the situation. The accused has been taken into custody; he has been informed that he has the right to remain silent and has the right to consult an attorney, and he has been informed that his operator's license can be suspended if he refuses to give a specimen of his breath or blood. He is placed on the horns of a dilemma—he has been told he may remain silent and consult an attorney, and in the same breath is required to answer a ques-

6. The following courts have found, on various bases, a right to consult with an attorney: *City of St. Louis Park v. Bunkers*, 310 Minn. 431, 432, 247 N.W.2d 404, 404 (1976) (after arrest, police must accommodate timely request to telephone lawyer); *People v. Gursey*, 22 N.Y.2d 224, 229, 292 N.Y.2d 416, 419, 239 N.E.2d 351, 353 (1968) (no arrest, no *Miranda*, defendant's request to telephone particular attorney denied); *People v. Rinaldi*, 107 Misc.2d 916, 917–18, 436 N.Y.S.2d 156, 157 (1981) (constitutional right to consult with attorney if no significant or obstructive delay); *People v. Sweeney*, 55 Misc.2d 793, 795, 796, 286 N.Y.S.2d 506, 508–09 (1968) (distinguishing *Schmerber* on basis that New York law, unlike California law, permits right not to consent to test; defendant arrested and received *Miranda* warnings); *State v. Hill*, 277 N.C. 547, 551, 178 S.E.2d 462, 465 (1971) (state statute provides for communication with counsel and friends immediately upon arrest, detention, or deprivation of liberty); *City of Dayton v. Nugent*, 25 Ohio Misc. 31, 34, 36, 265 N.E.2d 826, 828, 830 (1970) (after arrest and *Miranda* warnings, defendant told he could not call attorney until after test, pursuant to police department policy); *State v. Welch*, 135 Vt. 316, 321–22, 376 A.2d 351, 355 (1977) (considering driver's right to refuse test, chemical test can rise to critical stage in serious criminal case); *State v. Fitzsimmons*, 93 Wash.2d 436, 448, 610 P.2d 893, 900, *vacated on other grounds*, 449 U.S. 977, 101 S.Ct. 390, 66 L.Ed.2d 240 (1980) (after arrest and *Miranda* warnings, defendant denied consultation with attorney even though drivers have right to refuse test).

Courts finding no right to consult with counsel include: *Copelin v. State*, 635 P.2d 492, 493 (Alaska App.1981) (no constitutional right to attorney when deciding whether to take test); *Holmberg v. 54–A Judicial District Judge*, 60 Mich.App. 757, 760, 231 N.W.2d 543, 544 (1975) (arrested driver's test not critical stage); *Flynt v. State*, 507 P.2d 586, 588 (Okla. Cr.App.1973) (no right to counsel in choosing one of tests or refusing, after arrest and *Miranda* warnings); *State v. Newton*, 291 Or. 788, —, 636 P.2d 393, 404 (1981) (not every evidence-gathering procedure is critical stage; defendant not formally charged); *Law v. City of Danville*, 212 Va. 702, 703, 187 S.E.2d 197, 198 (1972) (minimal risk that breath test procedure would derogate from right to fair trial).

*State v. Jones*, 457 A.2d at 1118 n. 4.

tion which has significant results. If he refuses, he knows his license may be suspended and the fact that he refused can be used as evidence against him in his trial. If he consents and the test reveals an alcohol content in his blood of 0.10% or more, he is automatically guilty of driving while intoxicated. Even if the test results show less than 0.10% concentration of alcohol, there is no guarantee that he will not be tried for the offense of public intoxication, or driving while intoxicated by reason of the fact that his mental or physical faculties were impaired. It stretches reason to say this is not a critical stage of the pretrial proceeding. *Accord State of Vermont v. Welch*, 135 Vt. 316, 376 A.2d 351 (1977).[7] We therefore find, subject to the limitations to be discussed *infra*, that a person has a right to counsel prior to making a decision regarding whether to submit to the chemical test referred to in arts. 6701*l*–1 and 5.

Having determined that the right to counsel exists at this critical stage, is it an unbridled right? It is common knowledge that with time the normal bodily processes eliminate the alcohol from the blood. If the accused is permitted to unduly delay the answer to the request, it would be meaningless. Although it was based on a statutory rather than a constitutional right to counsel, we hold that *Prideaux v. State of Minnesota, Department of Public Safety*, 310 Minn. 405, 247 N.W.2d 385 (1976) provides the proper limited right to counsel. Adopting the language of that opinion, we hold that any person who is re-

quired to submit to a chemical test of the alcohol content of his blood, breath, or urine shall have the right to consult with a lawyer of his own choosing before making that decision, provided that such consultation does not unreasonably delay the administration of the test. The person must be informed of this right, and police officers must assist in its vindication. The right to counsel will be considered vindicated if the person is provided with a telephone prior to testing and given a reasonable time to contact and talk with counsel. If counsel cannot be contacted within a reasonable time, the person may be required to make a decision regarding testing in the absence of counsel.

In determining in the case at bar whether the error in admitting into evidence appellant's intoxilyzer test results constituted reversible error, we must decide whether there is a reasonable possibility that the evidence complained of might have contributed to the conviction or affected the punishment assessed. *See Johnson v. State*, 660 S.W.2d 536, 538 (Tex.Crim.App.1983). In applying this standard to the instant case, we hold the error is clearly not harmless, and mandates reversal. Appellant's fourth ground of error is sustained.

Since the decisions in *Burks v. United States*, 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978) and *Greene v. Massey*, 437 U.S. 19, 98 S.Ct. 2151, 57 L.Ed.2d 15 (1978), a challenge to the sufficiency of the evidence must be considered even though reversal is required on other grounds. *See Froyd v. State*, 633 S.W.2d 884, 885 (Tex.

---

**7.** We are aware that the 1977 case of *Vermont v. Welch*, just cited, was discussed in the similarly titled case *State of Vermont v. Welch*, 136 Vt. 442, 394 A.2d 1115 (1978). One ground of error discussed in the 1978 case was appellant's contention that the failure of the police to advise him of his alleged right to counsel to assist him in deciding whether to take a breath test denied him a right to counsel at a critical stage, violating his constitutional rights and rendering his refusal inadmissible in evidence. The discussion in the 1978 case states that the 1977 decision held only that police officials may not, without reason, deny access between defendant and his lawyer, when a lawyer is requested and is readily available. The 1978 case further

states the 1977 decision cannot be read as holding that a request to submit to a breath test is a critical stage in the federal constitutional sense. After making these last two observations, the court stated it declined to reach the defendant's right to counsel claim. The 1978 decision concludes with the holding that the Vermont statutory law mandates that a person who is requested by a law enforcement officer to submit to a chemical test shall have the right to consult with an attorney prior to deciding whether to submit to the test; that the decision must be made within a reasonable time but no later than thirty minutes from the time of the initial attempt to contact the attorney.

Crim.App.1982). This is so because a challenge to the sufficiency of the evidence, if sustained, bars a retrial. *Graham v. State,* 643 S.W.2d 920, 924 (Tex.Crim.App. 1983).

In ground of error two appellant asserts that there is insufficient evidence to support his conviction for driving while intoxicated. The basis for appellant's contention is that the intoxilyzer test results indicated that appellant had a blood alcohol concentration of 0.10%, and that inasmuch as the State's expert witness testified that the machine had an error factor of plus or minus 0.01%, it is very likely that the actual blood alcohol concentration of the appellant was 0.09% or less. Additionally, appellant contends that the reference sample used by the machine operator which should have tested as 0.10%, actually tested at 0.09%, and this was insufficient to prove beyond a reasonable doubt that appellant was intoxicated. Appellant claims that this discrepancy in the reference sample test results rebuts the opinion testimony of witnesses that appellant was intoxicated.

In reviewing the sufficiency of the evidence to support a conviction based upon direct evidence, the evidence is viewed in the light most favorable to the verdict. *Flournoy v. State,* 668 S.W.2d 380, 383 (Tex.Crim.App.1984). The critical inquiry is whether, after so viewing the evidence, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Id.; Wilson v. State,* 654 S.W.2d 465, 471 (Tex.Crim.App.1983).

The sufficiency of the evidence is a question of law. The issue on appeal is not whether we as a court believe the prosecution's evidence or believe that the defense evidence "outweighs" the State's evidence. If there is evidence which establishes guilt beyond a reasonable doubt, and if the trier of fact believes that evidence, we are not in a position to reverse the judgment on sufficiency of the evidence grounds. *See Wicker v. State,* 667 S.W.2d 137, 143 (Tex.Crim. App.1984).

Appellant was charged by information under both prongs of art. 6701*l*–1(a)(2).

The jury was charged that they should find appellant guilty as charged if they found from the evidence beyond a reasonable doubt that he was driving or operating a motor vehicle in a public place and that either: (1) he did not have the normal use of his mental or physical faculties by reason of the introduction of alcohol into his body, or (2) he had an alcohol concentration of 0.10% or more.

With regard to (1), Martha Raincrow testified that she saw appellant driving a vehicle and weaving all over the road, and she thereafter watched appellant run a stop sign, collide with Myrtle Fenton's car, and proceed to lose control of his car which ran into a ditch. Raincrow further testified that appellant stumbled and could not stand up without support.

Lieutenant William Crawford stated that when he approached appellant's vehicle, there was a strong smell of alcoholic beverage on appellant's breath and person, the zipper on appellant's pants was undone and the pants were open, appellant's speech was slurred and choppy, and he could not stand without support.

Inasmuch as we have held that appellant's intoxilyzer test results should not have been admitted into evidence, we will not consider whether these same results rebutted the testimony of the State's eyewitnesses.

It is proper for a charging instrument to allege different ways of committing the offense in the conjunctive and for the jury to be charged disjunctively. *Vasquez v. State,* 665 S.W.2d 484, 486 (Tex.Crim.App. 1984). Proof of either is sufficient absent an objection to the charge based upon insufficient evidence, or a motion to force the state to elect. *Vasquez,* 665 S.W.2d at 487. Where a jury returns a general verdict finding a defendant guilty as charged in the information the verdict must be applied to the phase of the offense which is supported by the evidence. *Id.* If there is sufficient evidence to prove one of the two ways of committing the offense, this Court need not consider whether the evidence is also sufficient to prove the alternative the-

ory. *See id.* Therefore, proof of either (1) or (2), above, is sufficient to sustain appellant's conviction.

We find that the evidence is sufficient to show that appellant was driving a vehicle in a public place while he did not have the normal use of his mental or physical faculties by reason of the introduction of alcohol into his body. This finding alone is sufficient to sustain the conviction, without regard to the evidence concerning the intoxilyzer test results.

Appellant's second ground of error is overruled.

In his fifth ground of error appellant claims that the trial court erred in failing to instruct the jury on the issue of whether appellant voluntarily consented to submit to an intoxilyzer examination. Appellant's basic assertion is that at the time he consented to take the intoxilyzer examination he was in custody, had been placed in a small room in the Fort Worth police station, and had previously requested presence of counsel.

It is unclear from reading appellant's ground of error whether he is contending that the fact issue as to voluntariness is solely because he invoked and was denied his right to counsel, or whether appellant claims there is other evidence in the record which raises the issue of his consent to take the breath test.

In light of our holding that appellant's intoxilyzer test results should not have been admitted into evidence because appellant was denied his right to counsel, we find it unnecessary to address this ground of error. However, we do note that had appellant's request to contact counsel been granted, the trial court would have been correct in refusing appellant's requested instruction. Lieutenant Crawford testified that appellant voluntarily consented to take the intoxilyzer examination, and the record is devoid of any evidence to the contrary.

Appellant's fifth ground of error is overruled.

Inasmuch as we have sustained appellant's fourth ground of error and held that the trial court committed reversible error in admitting into evidence the results of appellant's intoxilyzer test, we reverse and remand.

JOE SPURLOCK II and GRAY, JJ., and W.A. HUGHES, Jr., J., Retired (Sitting for JORDAN, J.), concur.

BURDOCK, J., files a concurring opinion.

FENDER, C.J., files an opinion concurring in part and dissenting in part in which HILL, J., joins.

BURDOCK, Justice, concurring.

I concur in the majority opinion and believe this case must be remanded for a new trial, but for an additional reason besides that expressed by Justice Ashworth.

No instruction by the trial court can cure the error caused by the prosecutor's improper comment that "We are not going to convict innocent people." Clearly, the prosecutor's highly prejudicial and unfair statement does not fall within one of the four general categories of acceptable jury argument set forth in the majority opinion.

In making such an argument, the prosecutor seeks to mislead the jury into believing that only the State represents the truth and that the defense counsel or court could be hiding something. While endeavoring to usurp the province of the jury, the State's attorney displays arrogance in his effort not to try the case, but rather to hold defense counsel up to shame, ridicule, and contempt.

I agree with the reasoning of the court in *Bell v. State*, 614 S.W.2d 122 (Tex.Crim. App.1981) and *Menefee v. State*, 614 S.W.2d 167 (Tex.Crim.App.1981). This conduct has no place in a court of law. The effect of this type of argument is that it implies that only the prosecution can speak the truth and that the defense attorney has a lesser code of ethical behavior. *See Lewis v. State*, 529 S.W.2d 533 (Tex.Crim.App. 1975). All attorneys are officers of the court and should conduct themselves accordingly.

FENDER, Chief Justice, concurring in part and dissenting in part.

Appellant challenges his D.W.I. conviction on eight grounds:

1. Improper prosecutorial closing argument wherein the prosecutor expressed an opinion as to appellant's guilt;

2. Insufficient evidence to sustain conviction;

3. Failure of the trial court to charge the jury on rebuttability of the presumption of intoxication;

4. Improper admission of intoxilyzer test results because appellant requested counsel before taking test and was denied counsel;

5. Failure of the trial court to charge the jury on the issue of voluntariness of appellant's consent to the intoxilyzer test;

6. Unconstitutionality of a conclusive presumption as to intoxication;

7. Unconstitutionally fatal variance between the caption and the body of Act of June 16, 1983, ch. 303, 1983, Tex.Gen. Laws 1568; and

8. That the definition of "public place" is unconstitutionally overbroad.

I concur in both the holding of the majority and the underlying legal reasoning in grounds of error two, three, six, seven and eight; i.e., there is sufficient evidence to convict, the appellant was not entitled to a charge on rebuttable presumption, there is no unconstitutional conclusive presumption, the caption fairly embraces the enacted provisions under attack in this appeal, and the definition of "public place" is not constitutionally overbroad.

I concur with the result reached by the majority on ground of error one, but I do so on other grounds. The prosecutor first referred to *you* in addressing the jury as to its function in the trial process. He next referred to Mr. Forte's rights. He next referred to *I* in connection with his burden of proof. He then referred to *we* in stating "We are not going to convict innocent people." By using the collective *we*, the prosecutor would apparently include himself, defense counsel, the jury, the court and all the witnesses. This appears to me to be a truism inherent in our system and falls within the general category of a plea for proper law enforcement. I would hold the argument permissible and overrule this ground of error on that basis.

As to appellant's fifth ground of error concerning voluntariness, I concur with the result reached by the majority but, in light of my subsequent feeling about denial of counsel, I would go further and hold that under the evidence in this case no issue was raised as to the voluntariness of consent and thus no charge to the jury on same should be considered by the trial court.

This brings us around to ground of error four, the challenge sustained by the majority which reverses this case because appellant insisted upon his right to counsel. As stated in the majority opinion, TEX.REV. CIV.STAT.ANN. art. 6701*l*-5, sec. 1 (Vernon 1984) provides that the driving of a motor vehicle on a public street shall be deemed to constitute consent to the taking of a breath specimen. Consent removes any warrant requirement. I would treat this case in the same *genre* as all consensual search and seizure questions. I would affirm the cause.

HILL, J., joins.